ANALYTICAL CONTROLS, an Indiana
Partnership, Plaintiff,

v.

AMERICAN HOSPITAL SUPPLY
CORPORATION, an Illinois
Corporation, Defendant.

No. IP 77–735–C.

United States District Court,
S. D. Indiana,
Indianapolis Division.

June 19, 1981.

John C. McNett of Woodard, Weikart,
Emhardt & Naughton, Indianapolis, Ind.,
for plaintiff.

John W. Chestnut of Tilton, Fallon,
Lungmus & Chestnut, Chicago, Ill., and
Philip S. Kappes and Gary Price of Dutton,
Kappes & Overman, Indianapolis, Ind., for
defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

STECKLER, Chief Judge.

This cause having come on for trial, the
Court having heard the evidence and the
arguments of the parties and having re-
ceived special verdicts from the jury, the
Court hereby enters the following findings
of fact and conclusions of law.

#### Findings of Fact

1. This is an action brought by plaintiff
under the patent laws of Title 35 of the
United States Code for infringement of
United States Patent Nos. 3,933,925 and
4,025,176.

2. The plaintiff, Analytical Controls, is
an Indiana partnership formed between
Professor Dean P. Bonderman and Profes-
sor Gary J. Proksch and having its principal

place of business at 1313 Merchants Plaza, East Tower, Indianapolis, Indiana 46204.

3. The defendant, American Hospital Supply Corporation, is a corporation organized and existing under the laws of the State of Illinois and having a place of business within this district at 8200 Allison Avenue, Indianapolis, Indiana, and defendant is doing business and is licensed to do business in the State of Indiana.

4. United States Patent No. 3,955,925 issued on May 11, 1976, to Gary J. Proksch and Dean P. Bonderman.

5. United States Patent No. 4,045,176 issued on August 30, 1977, to Gary J. Proksch and Dean P. Bonderman.

6. Each of United States Patent Nos. 3,955,925 and 4,045,176 was assigned to plaintiff, and plaintiff is the owner of both United States Patent Nos. 3,955,925 and 4,045,176 and all rights associated therewith.

7. Claims 1–3, 5, 6, 16, and 17 of United States Patent No. 4,045,176 and claim 18 of United States Patent No. 3,955,925 are the claims at issue in this case.

8. As the jury found in their special verdicts, there was no prior art which was closer to the claimed inventions that was not considered by the Patent Office as to either the '925 or the '176 patent.

9. As the jury found in their special verdicts, the language of claim 18 of the '925 patent and claims 1, 2, 3, 5, 6, 16, and 17 of the '176 patent particularly points out and distinctly claims the subject matter of the inventions claimed therein.

10. Each of claims 1–3, 5, 6, 16, and 17 of the '176 patent are entitled to the effective filing date of November 12, 1973, such date being the actual filing date of the parent application, Serial No. 414,799 based upon the jury's finding that the invention claimed in each of said claims is described in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention so claimed.

11. As found by the jury, claims 1, 2, 3, 5, 6, 16, and 17 of the '176 patent do not describe inventions made in this country by another prior to the time the inventions described therein were made by the applicants, Drs. Proksch and Bonderman.

12. As to both patents, the prior art includes several methods for removing alpha, beta, and pre-beta lipoproteins from human and animal serums. It also includes the process of lyophilization of serums. Also part of the prior art is the knowledge that turbidity in reconstituted lyophilized serum was due to the denaturation of beta lipoproteins. Finally, the prior art also included knowledge that while cholesterol in human serum was contained in the beta lipoproteins, in bovine serum it was contained in alpha lipoproteins.

13. No single prior art reference shows the inventions claimed in any of the claims at issue in this case.

14. As found by the jury, a person possessing ordinary skill in the art is one who has bachelor's and master's degrees in chemistry or biology, experience in the formulation of quality control serums and reference materials, and the capability and background to read and understand articles such as the Burstein and Oncley articles. A Ph.D. degree in chemistry or biology and knowledge of serum lipoproteins and their relationship to cholesterol and triglyceride are not attributes which a person must have to possess ordinary skill in the art.

15. The inventions in claims 1–3, 5, 6, 16, and 17 of the '176 patent and claim 18 of the '925 patent constitute an improvement over the prior art as found by the jury.

16. As the jury found, the inventions in claims 1–3, 5, 6, 16, and 17 of the '176 patent and claim 18 of the '925 patent satisfied a long felt need in the area of quality control serums and reference serums.

17. The jury found that the inventions achieved commercial success principally because of the claimed invention and not because of other factors such as advertising, promotion, or salesmanship.

18. The results achieved through the use of the products or processes covered by both the '925 and '176 patents were found by the jury to be unexpected or surprising.

19. Plaintiff's licensee, Analytical Controls Systems, Inc., the stock of which is owned by the partners of plaintiff, sold its product made under the '925 patent in bulk to a third party, Sigma, who was not a licensee of plaintiff. This bulk product, as well as plaintiff's other licensed products, bore a proper marking of the patent. Sigma repackaged and sold the product without marking the product with a patent number.

20. The Gelman product has the same combination of elements or steps, or the substantial equivalent thereof, as claim 18 of the '925 patent.

21. The jury found that defendant's products Monitrol IX batches prepared with bovine high density lipoproteins, Moni-Trol II, Moni-Trol IIX, Lipid-Trol, and Calibration Reference Serum each had the same combination of elements or steps, or the substantial equivalent thereof as claims 1 and 16 of the '176 patent.

22. Claims 2, 3, 5, and 6 of the '176 patent are dependent on claim 1 of the '176 patent. Claim 17 of the '176 patent is dependent on claim 16 of that patent.

23. Based upon stipulated sales figures for defendant's products, the jury found that the following represent reasonable royalty figures to be awarded to plaintiff:

| Product | Sales Figures | Royalty Rates | | |
|---|---|---|---|---|
| Moni-Trol IX | $ 708,216 | Reasonable Royalty: based upon a royalty rate of | $10,623.27 | 1.5% |
| Moni-Trol II | 4,612,207 | Reasonable Royalty: based upon a royalty rate of | 46,122.07 | 1% |
| Moni-Trol IIX | 9,038,907. | Reasonable Royalty: based upon a royalty rate of | 90,389.07 | 1% |
| Lipid-Trol | 315,556 | Reasonable Royalty: based upon a royalty rate of | 6,311.12 | 2% |
| Cal.Ref.Ser. | 1,309,906 | Reasonable Royalty: based upon a royalty rate of | 26,198.12 | 2% |
| Gelman 51913 | 46,950 | Reasonable Royalty: based upon a royalty rate of | 469.50 | 1% |

24. The jury found the defendant's conduct was willful and wanton.

### Conclusions of Law

1. This Court has jurisdiction over the subject matter of this action and personal jurisdiction over the defendant, and venue is proper.

2. United States Patent Nos. 3,955,925 and 4,045,176 are presumed to be valid, and defendant failed to overcome the presumption of validity.

3. Each of claims 1–3, 5, 6, 16, and 17 of the '176 patent are entitled to the effective filing date of November 12, 1973.

4. None of the patented claims in issue are invalid under 35 U.S.C. § 112 because of vagueness or indefiniteness.

5. None of the patented claims in issue are invalid under 35 U.S.C. § 102(g).

6. The Court concludes that the claimed inventions in claims 1–3, 5, 6, 16, and 17 of the '176 patent and claim 18 of the '925 patent were not obvious to a person of

ordinary skill in the art at the time the inventions were made by Drs. Proksch and Bonderman. Therefore, none of the disputed claims are invalid under 35 U.S.C. § 103.

7. The '925 patent is infringed by the following product sold by defendant: Protein Electrophoresis Control (Gelman 51913) —Scientific Products No. E 4715–35.

8. The '176 patent is infringed by each of the following products manufactured and sold by defendant.

(a) Moni-Trol II, Chemistry Control— Catalog Nos. B5113 and B5103–20, except for a few batches made without the addition of isolated bovine high density lipoproteins;

(b) Moni-Trol IIX, Chemistry Control— Catalog Nos. B5106–2, B5106–4, and B5103–6, except for a few batches made without the addition of isolated bovine high density lipoproteins;

(c) Lipid-Trol—Catalog No. B5129–5;

(d) Calibration Reference Serum—Catalog No. B5129–5; and

(e) Moni-Trol IX, Chemistry Control— Catalog Nos. B5106–1, B5106–3, and B5103–5, as to the few batches prepared with the addition of isolated bovine high density lipoproteins.

■ 9. Sigma's failure to mark products with the patent number, as set forth in finding 19, does not bar plaintiff's right to recover damages despite the lack of actual notice to the defendant. 35 U.S.C. § 287.

10. Plaintiff is awarded damages in the amount of One Hundred Eighty Thousand One Hundred Thirty-Three Dollars and Fifteen Cents ($180,133.15).

■ 11. Notwithstanding the fact that the jury found the defendant's conduct to have been willful and wanton, the Court, from the whole of the evidence, finds and concludes that the issue of patentability of the claims in suit was debatable and was litigated in good faith. For that reason the Court concludes plaintiff is not entitled to attorney fees or increased damages. *See, e. g., Wahl v. Carrier Mfg. Co.,* 511 F.2d 209, 214 (7th Cir. 1975); *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.,* 484 F.2d 905, 909 (7th Cir. 1973).

12. Plaintiff and defendant shall each bear their respective costs of this litigation. 35 U.S.C. § 284.

13. Plaintiff is entitled to an injunction against defendant to prevent further infringement of claims 1, 2, 3, 5, 6, 16, and 17 of the '176 patent and claim 18 of the '925 patent, and defendant shall be so enjoined.

## APPENDIX 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF INDIANA

INDIANAPOLIS DIVISION

| | |
|---|---|
| ANALYTICAL CONTROLS, <br> an Indiana partnership ) <br> ) <br> v. ) <br> ) <br> AMERICAN HOSPITAL SUPPLY <br> CORPORATION, <br> an Illinois corporation ) | IP 77-735-C |

SPECIAL VERDICTS

Validity.

Refer to Instruction 8.

Question:

(1) Was there prior art that was closer to the claimed invention that was not

considered by the Patent Examiner as
to the '925 patent?

Yes _____ No ✔

(2) Was there prior art that was closer to
the claimed invention that was not
considered by the Patent Examiner as
to the '176 patent?

Yes _____ No ✔

Refer to Instruction 9.

Question: Do you find that the language of the claims
listed below particularly points out and
distinctly claims the subject matter of the
patent as described in Instruction 9?

Claim 18 of '925 Patent: Yes ✔ No _____

Claim 1 ) Yes ✔ No _____
 )
Claim 2 ) Yes ✔ No _____
 )
Claim 3 ) Yes ✔ No _____
 )
Claim 5 ) of '176 patent Yes ✔ No _____
 )
Claim 6 ) Yes ✔ No _____
 )
Claim 16) Yes ✔ No _____
 )
Claim 17) Yes ✔ No _____

Refer to Instruction 10.

Questions:

(1) Do you find that plaintiff has proved
by a preponderance of the evidence that
the invention claimed in Claim 1 of the
'176 patent is described in the first
patent application in such full, clear,
concise, and exact terms as to enable
any person skilled in the art to make and
use the invention claimed in Claim 1?

Yes ✔ No _____

(2) Do you find that plaintiff has proved
by a preponderance of the evidence that
the invention claimed in Claim 2 of the
'176 patent is described in the first
patent application in such full, clear,
concise, and exact terms as to enable
any person skilled in the art to make
and use the invention claimed in Claim 2?

Yes ✔ No _____

(3) Do you find that plaintiff has proved
by a preponderance of the evidence that the
invention claimed in Claim 3 of the '176
patent is described in the first patent
application in such full, clear, concise,
and exact terms as to enable any person
skilled in the art to make and use the
invention claimed in Claim 3?

Yes ✔ No _____

(4) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 5 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 5?

Yes ✓ No _____

(5) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 6 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 6?

Yes ✓ No _____

(6) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 16 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 16?

Yes ✓ No _____

(7) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 17 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 17?

Yes ✓ No _____

Refer to Instruction 11.

Question: To you find that any of the claims listed describe an invention made in this country by another prior to the time the invention was made by Drs. Proksch and Bonderman?

| | | Yes | No |
|---|---|---|---|
| Claim 1 ) | | _____ | ✓ |
| Claim 2 ) | | _____ | ✓ |
| Claim 3 ) | | _____ | ✓ |
| Claim 5 ) of the '176 | | _____ | ✓ |
| Claim 6 ) patent | | _____ | ✓ |
| Claim 16) | | _____ | ✓ |
| Claim 17) | | _____ | ✓ |

Refer to Instruction 12.

Questions:

(1) Did a person having ordinary skill in the subject of serums for use as standard or reference materials at the time the inventions of the plaintiff's patents were made have:
(Check more than one if applicable.)

 (a) A bachelor's degree in chemistry or biology. ✓

 (b) A master's degree in chemistry or biology. ✓

 (c) A Ph.D. degree in chemistry or biology. _____

 (d) Knowledge of serum lipoproteins and their relationship to cholesterol and triglyceride. _____

 (e) Experience in formulation of quality control serums and reference materials. ✓

 (f) Capability and background to read and understand articles such as the Burstein and Oncley articles. ✓

(2) Do you find that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent constitute an improvement over the prior art?

 Yes ✓ No _____

(3) Do you find that the invention of Claim 18 of the '925 patent constitutes an improvement over the prior art?

 Yes ✓ No _____

(4) Do you find from a preponderance of the evidence that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent satisfied a long felt need?

 Yes ✓ No _____

(5) Do you find from a preponderance of the evidence that the invention of Claim 18 of the '925 patent satisfied a long felt need?

 Yes ✓ No _____

(6) Do you find from a preponderance of the evidence that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent achieved commercial success principally because of the claimed invention?

 Yes ✓ No _____

(7) Do you find from a preponderance of the evidence that the invention of Claim 18 of the '925 patent achieved commercial

success principally because of the claimed invention?

Yes ✓ No _____

(8) Do you find that the results achieved through the use of the process or products covered by the '925 patent were unexpected or surprising?

Yes ✓ No _____

(9) Do you find that the results achieved through the use of the process or products covered by the '176 patent were unexpected or surprising?

Yes ✓ No _____

Dated this _____15th___ day of __APRIL_____, 1981.

_____[Signature]_____

Foreperson

## Infringement.

Refer to Instruction 13.

Questions:

(1) Do you find that the Gelman product has the same combination of elements or steps, or the substantial equivalent thereof as defined in Instruction 13, as Claim 18 of the '925 patent?

Yes ✓ No _____

(2) Do you find that any of the following products have the same combination of elements or steps, or the substantial equivalent thereof as Claim 1 or Claim 16 of the '176 patent?

(a) Moni-Trol IX batches prepared with bovine high density lipaproteins.

Claim 1 Yes ✓ No _____

Claim 16 Yes ✓ No _____

(b) Moni-Trol II

Claim 1 Yes ✓ No _____

Claim 16 Yes ✓ No _____

(c) Moni-Trol IIX

Claim 1 Yes ✓ No _____

Claim 16 Yes ✓ No _____

(d) Lipid-Trol

Claim 1 Yes ✓ No \_\_\_\_

Claim 16 Yes ✓ No \_\_\_\_

(e) Calibration Reference Serum

Claim 1 Yes ✓ No \_\_\_\_

Claim 16 Yes ✓ No \_\_\_\_

Dated this \_\_15th\_\_ day of \_\_APRIL\_\_, 1981.

[Signature]
_____
Foreperson

Damages.

Refer to Instruction 16.

Question: The amount of sales of the accused products are set forth below as stipulated by the parties. What is the amount of a reasonable royalty which you find from a preponderance of the evidence? Please indicate the reasonable royalty as a dollar amount to the right of the sales figure for each product.

Moni-Trol IX $ 708,218 Reasonable Royalty: $ 10,623.27 based upon a royalty rate of 1.5 %

Moni-Trol II 4,612,207 Reasonable Royalty $ 46,122.07 based upon a royalty rate of 1 %

Moni-Trol IIX 9,038,907 Reasonable Royalty: $ 90,389.07 based upon a royalty rate of 1 %

Lipid-Trol 315,556 Reasonable Royalty: $ 6,311.12 based upon a royalty rate of 2 %

Cal.Ref.Ser. 1,309,906 Reasonable Royalty: $ 26,198.12 based upon a royalty rate of 2 %

Gelman 51913 46,950 Reasonable Royalty: $ 469.60 based upon a royalty rate of 1 %

Refer to Instruction 17.

Question: Based upon the definition contained in Instruction 17, do you find that defendant's conduct was willful and wanton?

Yes ✓ No \_\_\_\_

Dated this \_\_15\_\_ day of \_\_April\_\_, 1981

[Signature]
_____
Foreperson

APPENDIX 2

Instruction No. 1

Members of the Jury:

At this time it becomes the duty of the Court to instruct you on the law as it applies to this case, but first of all I should like to thank you for . . . .

It will be your duty as jurors to follow the law as the Court states it to you. On the other hand, you must keep in mind that it is the exclusive province of the jury to determine the facts of the case, and for that purpose to consider and weigh the evidence.

Instruction No. 2

If in these instructions any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me and none must be inferred by you. For that reason you are not to single out any certain sentence or any individual point or instruction and ignore the others, but you are to consider all the instructions, and as a whole, and you are to regard each instruction in the light of all the others.

Instruction No. 3

In this civil action, the plaintiff, Analytical Controls, seeks to recover damages from the defendant, American Hospital Supply Corporation. It will not be necessary for me to read to you plaintiff's complaint and the defendant's answer, the pleadings as they are called, in their entirety. I shall, however, paraphrase the substantive allegations to refresh your understanding of the issues to be resolved.

The complaint alleges that plaintiff, Analytical Controls, a partnership, is the owner of two United States patents, Numbers 3,955,925, referred to as the first patent, and 4,045,176, referred to as the second patent. It is further alleged that the patents, both entitled "Preparation of Optically Clear Serum," were issued to the inventors, Dean P. Bonderman and Gary J. Proksch, the first being issued on May 11, 1976, and the second on August 30, 1977. Both of these patents relate to standards or reference materials used by hospitals and laboratories to perform tests of human blood. It is averred that both patents and all rights associated therewith are now owned by plaintiff which is a partnership between the two inventors, Proksch and Bonderman.

Plaintiff alleges that certain products manufactured and sold by defendant infringe certain claims of the two patents. More specifically, it is alleged that a product called "Gelman 51913" sold by defendant infringes Claim 18 of the first patent. Products manufactured by defendant called Moni-Trol II, Moni-Trol IIX, Lipid-Trol, Calibration Reference Serum, and those lots of Moni-Trol IX containing bovine high density lipoprotein allegedly infringe Claims 1, 2, 3, 5, 6, 16, and 17 of the second patent.

It is further alleged that although defendant was aware of the existence of both patents and was warned about infringement of the second patent, it deliberately continued to infringe the patents and has made extensive sales of the infringing products.

As a result of the alleged wrongful acts of defendant, plaintiff seeks damages in the amount of $4,000,000.00, or such other amount as the evidence may show, representing a reasonable royalty, treble damages due to the alleged deliberate nature of the infringement, costs, attorney fees, and an injunction against further infringement.

In its answer defendant admits that the patents were issued as alleged and that it was aware of the existence of both patents and warned about alleged infringement of the second patent. Defendant denies that it infringed either patent and that either patent was validly issued. For an affirmative defense, defendant avers that both patents are invalid. Defendant therefore prays that the action be dismissed and that it be awarded costs and attorney fees.

These are the issues to be resolved in this action.

Instruction No. 4

That is an explanation of the pleadings in this case. I have given you this outline in order that you may know what the parties have said and claimed in the papers they have filed in this court, and that you may

better understand the issues in the case. The pleadings are merely the formal way of presenting the case for trial. I instruct you that the pleadings, except in so far as any admissions are contained therein, are not a part of the evidence in this case, and should not be considered by you as such. Any admissions contained in the pleadings must be accepted by you as true, and are not required to be supported by additional evidence.

Instruction No. 5

The plaintiff in this case is a partnership and the defendant is a corporation. These parties can act only by their officers, agents, servants, or employees. Therefore, whenever mention is made of a party doing or not doing anything, then of course it means the partnership or corporation or any of its officers, agents, servants or employees, acting within the scope of their employment or authority.

Instruction No. 6

The plaintiff in this case is a partnership operating under the name "Analytical Controls" and formed by Gary Proksch and Dean Bonderman, individuals who reside in Indianapolis. Plaintiff owns United States Patent Numbers 3,955,925 and 4,045,176, and all rights to collect damages for any past infringement of these patents. For convenience, the first patent is referred to as the '925 patent and the second patent is referred to as the '176 patent. Plaintiff has claimed that the defendant, American Hospital Supply Corporation, an Illinois corporation, has infringed these two patents and should be required to pay damages resulting from its past use of the inventions of these two patents. The corporation responds (1) by claiming that plaintiff's patents were not duly, lawfully and regularly issued in accordance with the law and is therefore invalid; and by denying that it has infringed either the '925 or the '176 patent.

This leaves for determination the disputed issues which may be summarized as follows:

(1) Are either or both of the patents here in issue valid patents?

(2) If valid, did the defendant infringe either or both of such patents?

(3) If the patents are valid, and if the defendant infringed either or both of the patents, what is the amount of damages, if any, caused by the infringement?

Instruction No. 7

Whenever a valid patent is issued by the Patent Office, the patent law extends to the inventor for seventeen (17) years the exclusive right of manufacture, sale, and use of the invention in return for a disclosure of the best manner or method contemplated by the inventor for the construction, operation and utilization of the subject matter of the patent.

This required disclosure attaches to and becomes a part of the letters patent and is characterized and styled as the specification. The specification of a patent is everything in the patent up to the claims.

At the end of the specification there are a series of numbered paragraphs referred to as patent "claims." Each claim of a patent represents a definition of the coverage of a patent. The claims of the patent must define the particular thing claimed to have been invented so the public will know what the thing is, and be able to avoid infringing. The function of a patent claim is, therefore, not merely to outline or summarize what is shown and described, but rather to define the boundaries of the claimed invention. An example set forth in a patent cannot be infringed; only the patent claims can be infringed. As to each claim, the language of such claim must be read in light of the specification and file history. A claim may be written in independent or dependent form, and if in dependent form, it shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim.

The specification also includes references to certain specific examples of the invention which should be described with sufficient clarity to allow a person skilled in the relevant technical area to use the best mode of the invention without the need for undue

experimentation. There is no requirement that an inventor actually do the experiments shown by way of example in a patent application, and nothing improper should be inferred or concluded by the failure of an inventor to do an experiment set forth in a patent application.

If a claim when read describes an invention which is in the prior art, then the claim is invalid. The invalidity of one claim of a patent does not necessarily require the invalidity of other claims of the patent. If a claim when read describes a product or process performed by the defendant, then the claim is infringed. If one or more valid claims of a patent are infringed, then the patent is infringed.

Instruction No. 8

The defendant has the burden of proof of its affirmative defenses directed to the invalidity of the patents. In considering the defenses of invalidity, the Court instructs you to consider whether the prior art considered by the United States Patent and Trademark Office was as close to plaintiff's claimed inventions as the prior art which has been presented by the defendant. If the defendant has not presented in this action prior art which is closer than that considered by the United States Patent and Trademark Office, then the law presumes the patents here in question to be valid, in the absence of clear and convincing evidence to the contrary, and presumes further that the United States Patent and Trademark Office acted correctly in issuing the patents. However, there is no presumption of validity of the patents when considering invention over what is disclosed in any prior art which may be found to be closer than that considered by the United States Patent and Trademark Office.

As stated above, as long as the presumption of validity has not been overcome by the defendant, patents are presumed valid in the absence of clear and convincing evidence. Clear and convincing evidence is defined as "that measure or degree of proof which will produce in the mind of the trier of the facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a preponderance, but less than that required to establish guilt beyond a reasonable doubt as required in criminal cases.

\* \* \* \* \* \*

Questions:

(1) Was there prior art that was closer to the claimed invention that was not considered by the Patent Examiner as to the '925 patent?

Yes \_\_\_\_\_ No \_✓\_\_

(2) Was there prior art that was closer to the claimed invention that was not considered by the Patent Examiner as to the '176 patent?

Yes \_\_\_\_\_ No \_✓\_\_

Instruction No. 9

The patent law requires that the claims of the patent particularly point out and distinctly claim the subject matter which the applicants for the patent regard as their invention. A claim which is ambiguous, indefinite, or vague is not valid. An indefinite claim is objectionable because such a claim does not disclose to the public how infringement of the claim can be avoided. If by clear and convincing evidence the defendant proves that one or more claims of a patent fail to particularly point out and distinctly claim the subject matter which the plaintiff regards as the invention, such claim or claims are invalid.

\* \* \* \* \* \*

Question: Do you find that the language of the claims listed below particularly points out and distinctly claims the subject matter of the patent as described above?

Claim 18 of '925 patent: Yes ⟋ No _____

Claim 1 ) Yes ✓ No _____
 )
 2 ) Yes ✓ No _____
 )
 3 ) Yes ✓ No _____
 )of '176 patent
 5 ) Yes ✓ No _____
 )
 6 ) Yes ✓ No _____
 )
 16 ) Yes ✓ No _____
 )
 17 ) Yes ✓ No _____

---

**Instruction No. 10**

The '176 patent was issued on patent application Serial No. 671,175 filed on March 29, 1976. This application was designated as a continuation-in-part application of an earlier patent application, Serial No. 414,799 filed on November 12, 1973.

Section 120 of Title 35, United States Code, provides that a claim in a later filed application shall have the benefit of the filing date of an earlier filed application if the invention claimed in the later application was disclosed sufficiently, that is, in such full, clear, concise, and exact terms, in the first application to enable any person skilled in the art to make and use the invention claimed in the second application.

\* \* \* \* \* \*

Questions:

(1) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 1 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 1?

Yes ✓ No _____

(2) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 2 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 2?

Yes ✓ No _____

(3) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 3 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art

to make and use the invention claimed in Claim 3?

Yes ___✓___ No _____

(4) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 5 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 5?

Yes ___✓___ No _____

(5) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 6 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 6?

Yes ___✓___ No _____

(6) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 16 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 16?

Yes ___✓___ No _____

(7) Do you find that plaintiff has proved by a preponderance of the evidence that the invention claimed in Claim 17 of the '176 patent is described in the first patent application in such full, clear, concise, and exact terms as to enable any person skilled in the art to make and use the invention claimed in Claim 17?

Yes ___✓___ No _____

---

Instruction No. 11

Under Section 102(g) of Title 35, United States Code, a person is not entitled to a patent if before the patent applicant first made the claimed invention, the invention was made in the United States by another who had not abandoned, suppressed or concealed the invention. Thus, if a claim when read describes an invention made in this country by another prior to the time the patent applicant made the invention, that claim is invalid under this law. In this regard, it must be noted that each claim of the patents in suit must be considered separately.

\* \* \* \* \* \*

Question: Do you find that any of the claims listed describe an invention made in this country by another prior to the time the invention was made by Drs. Proksch and Bonderman?

Claim 1 ) Yes _____ No ___✓___
 )
 2 ) Yes _____ No ___✓___
 )

3 ) Yes _____ No ✓
 )
5 )of the '176 patent Yes _____ No ✓
 )
6 ) Yes _____ No ✓
 )
16 ) Yes _____ No ✓
 )
17 ) Yes _____ No ✓

**Instruction No. 12**

Under Section 103 of Title 35, United States Code, a patent may not be validly obtained if the differences between the subject matter sought to be patented and the "prior art" are such that the subject matter as a whole would have been obvious, at the time the claimed invention was made, to a person having ordinary skill in the art to which the subject matter pertains.

The term "prior art" includes all of the methods or products which are similar to those described in the patent and which are disclosed in patents issued or publications made prior to the date of the alleged invention covered by the patent in question as well as all such processes or products which are publicly known or used by anyone at any time prior to one year before the patent in question was applied for. Inventions previously patented, or publicly described, or publicly known are conclusively characterized as "prior art."

The ultimate decision on this question of whether or not the subject matter of the patents in question was "obvious" is one for the Court to make. However, you, the jury, will be asked to aid the Court in this decision by deciding what was the level of ordinary skill in the pertinent art.

In determining whether a claimed invention evidences more skill than that possessed by a person of ordinary skill in the art, you may consider whether the results of the claimed invention were unexpected, filled a long felt need, whether it has been imitated by others, and whether it has enjoyed a commercial success. However, before commercial success can be considered, the evidence in the case must show that the success is due to the novel features of the subject matter claimed in the patent, rather than other considerations, such as advertising, promotion, salesmanship, and other factors, which are frequently decisive in bringing about the success or failure of a product on the market.

\* \* \* \* \* \*

Questions:

(1) Did a person having ordinary skill in the subject of serums for use as standard or reference materials at the time the inventions of the plaintiff's patents were made have: (Check more than one if applicable.)

(a) A bachelor's degree in chemistry or biology. YES

(b) A master's degree in chemistry or biology. YES

(c) A Ph.D. degree in chemistry or biology. NO

(d) Knowledge of serum lipoproteins and their relationship to cholesterol and triglyceride. NO

(e) Experience in formulation of quality control serums and reference materials. YES

(f) Capability and background to read and understand articles such as the Burstein and Oncley articles.

(2) Do you find that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent constitute an improvement over the prior art?

Yes ✓ No _____

(3) Do you find that the invention of Claim 18 of the '925 patent constitutes an improvement over the prior art?

Yes ✓ No _____

(4) Do you find from a preponderance of the evidence that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent satisfied a long felt need?

Yes ✓ No _____

(5) Do you find from a preponderance of the evidence that the invention of Claim 18 of the '925 patent satisfied a long felt need?

Yes ✓ No _____

(6) Do you find from a preponderance of the evidence that the inventions of Claims 1-3, 5, 6, 16, and 17 of the '176 patent achieved commercial success principally because of the claimed invention?

Yes ✓ No _____

(7) Do you find from a preponderance of the evidence that the invention of Claim 18 of the '925 patent achieved commercial success principally because of the claimed invention?

Yes ✓ No _____

(8) Do you find that the results achieved through the use of the process or products covered by the '925 patent were unexpected or surprising?

Yes ✓ No _____

(9) Do you find that the results achieved through the use of the process or products covered by the '176 patent were unexpected or surprising?

Yes ✓ No _____

Instruction No. 13

You are instructed that whoever, without authority or license, or other permission from the owner of a valid patent, makes or uses or sells the patented invention anywhere in the United States during the term of a valid patent, infringes the patent. A person may infringe a valid patent without intent to do so; a person may infringe a valid patent: 1) without actual knowledge of the existence of the patent; 2) without knowledge that his acts constitute infringement; 3) in the good faith belief that his actions do not constitute infringement of any patent.

In order to prove infringement, the plaintiff must prove, by a preponderance of the evidence, that the methods utilized by the defendant embody every essential step of the invention set forth in one or more of the claims of the patents. In this regard, each claim must be separately considered since proof of infringement of any one claim is sufficient to establish infringement of the patent.

If the methods utilized and products sold by the defendant do not have one of the steps or elements of a claim, then there is no infringement of that claim. However, in those cases where each and every step or element in the defendant's process or product does not come within the literal words of the claim, infringement of the patent may nevertheless be found if the defendant's process or product differs from the claim only because of steps or elements that perform substantially the same function in substantially the same way to produce substantially the same results as the steps or elements of the invention set forth in the claims. In other words, if an equivalent for each step or element recited in a claim is found in the defendant's process or product, and if each equivalent performs substantially the same function in substantially the same way to produce substantially the same results as the steps or elements recited in the claim, then the claim is infringed. You may determine equivalency from the expert testimony you have heard, from the documents which have been introduced into evidence, and from the disclosures of the prior art.

In applying that test, known as the doctrine of equivalents, the plaintiff is prohibited from relying on the doctrine of equivalents if the defendant's process or product is like the prior art. Conversely, where the defendant's process or product is so far changed in principle from the plaintiff's claimed invention that it performs the same function in a substantially different way, but nevertheless falls within the literal words of the claim, the patent is not infringed. However, the law provides that a patent may be infringed by a process or product which does not always perform as well or which does not always perform in precisely the same way as does the patented product.

You are instructed that Claims 2, 3, 5, and 6 of the '176 patent are dependent on Claim 1 of the '176 patent. Therefore, if you find that Claim 1 is infringed, then it follows that Claims 2, 3, 5, and 6 are infringed. Conversely if Claim 1 is not infringed, then Claims 2, 3, 5, and 6 are not infringed. Similarly, you are instructed that Claim 17 of the '176 patent is dependent on Claim 16 of the '176 patent. Thus, if you find that Claim 16 is infringed, then Claim 17 is infringed. If Claim 16 is not infringed, then Claim 17 is not infringed.

You are instructed that you should consider these questions of infringement separately and independently from questions of the validity of the claims.

\* \* \* \* \* \*

Questions:

(1) Do you find that the Gelman product has the same combination of elements or steps, or the substantial equivalent thereof as defined above, as Claim 18 of the '925 patent?

Yes _✓_ No _____

(2) Do you find that any of the following products have the same combination of elements or steps, or the substantial equivalent thereof as Claim 1 or Claim 16 of the '176 patent?

a) Moni-Trol IX batches prepared with bovine high density lipaproteins.

Claim 1 Yes _✓_ No _____

Claim 16 Yes _✓_ No _____

b) Moni-Trol II

 Claim 1 Yes __✓__ No _____

 Claim 16 Yes __✓__ No _____

c) Moni-Trol IIX

 Claim 1 Yes __✓__ No _____

 Claim 16 Yes __✓__ No _____

d) Lipid-Trol

 Claim 1 Yes __✓__ No _____

 Claim 16 Yes __✓__ No _____

e) Calibration Reference Serum

 Claim 1 Yes __✓__ No _____

 Claim 16 Yes __✓__ No _____

---

**Instruction No. 14**

I must further instruct you with regard to the measure of the plaintiff's damages, if there is to be any recovery in this case.

I do not mean, however, to intimate in any way that there is or is not any right to recover in this case. That is a question solely for you to determine, from the law and the evidence.

**Instruction No. 15**

The fact that the plaintiff has demanded a certain amount in its complaint, which amount has been mentioned to you in these instructions, does not mean that the plaintiff is entitled to recover such amount or any amount in this action. The amount to be awarded, if any, must be governed by the instructions on the measure of damages I am about to give you.

**Instruction No. 16**

Section 284 of Title 35, United States Code, provides that in the case of infringement, the owner of the patent is entitled to an award of damages adequate to compensate for the infringement, but in any event no less than a reasonable royalty for the use made of the invention by the infringer.

Thus, the damages to the plaintiff caused by infringement, if indeed there was any infringement, will be determined on the basis of what the jury finds, from a preponderance of the evidence, would have been a reasonable royalty to be paid for a license to use the claimed invention during the period of the infringement.

A reasonable royalty is defined as the amount which the owner of a patent would accept, assuming a willingness on his part to license its use, from a person who is desirous of obtaining a license to use the claimed invention, neither of whom is acting under financial distress or other compulsion to enter into the agreement.

In determining a reasonable royalty, the jury is entitled to consider any evidence bearing upon profits the defendant may have realized from the infringement, as well as any evidence bearing upon the amount of money the plaintiff may have lost because of the infringement; also any opinions expressed as to the amount of money that would have constituted a reasonable royalty during the period of infringement.

The owner of a patent is permitted to express his opinion as to a reasonable royalty; and such testimony is to be weighed

and considered by the jury in accordance with the instructions that I shall hereafter give you.

The reasonable royalty should be determined as of a date prior to the time at which the alleged infringement began.

\* \* \* \* \* \*

Question: The amount of sales of the accused products are set forth below as stipulated by the parties. What is the amount of a reasonable royalty which you find from a preponderance of the evidence? Please indicate the reasonable royalty as a dollar amount to the right of the sales figure for each product.

MONI-TROL IX $ 708,218 Reasonable Royalty: $ _10,623.27_
based upon a royalty rate of _(1.5)_ %

MONI-TROL II 4,612,207 Reasonable Royalty: $ _46,122.07_
based upon a royalty rate of _1_ %

MONI-TROL IIX 9,038,907 Reasonable Royalty: $ _90,389.07_
based upon a royalty rate of _1_ %

LIPID-TROL 315,556 Reasonable Royalty: $ _6,311.12_
based upon a royalty rate of _2_ %

CAL.REF.SER. 1,309,906 Reasonable Royalty: $ _26,198.12_
based upon a royalty rate of _2_ %

GELMAN 51913 46,950 Reasonable Royalty: $ _469.50_
based upon a royalty rate of _1_ %

_180,113.15_

---

Instruction No. 17

If an infringer acts "willfully" and "wantonly" in infringing one or more of the patents in suit, then the Court may, in its discretion, increase the amount of damages found to be actual damages as determined by the application of a reasonable royalty for the sales of the infringing products in an amount up to three times.

Whether the actual damages for infringement ought to be increased, and if so, the amount of the increase, are matters exclusively within the province of the Court, and are not to be considered by you in any way.

However, you, the jury, must determine whether or not plaintiff has proved by a preponderance of the evidence that defendant's conduct in the alleged infringement was willful and wanton.

An act of infringement is "willfully" done, if done voluntarily and intentionally, and not because of mistake, inadvertence or other innocent reason. An act is "wantonly" done, if done in reckless or callous disregard of, or indifference to, the rights of another.

\* \* \* \* \* \*

Question: Based upon the above definition, do you find that defendant's conduct was willful and wanton?

Yes ✓ No _____

## Instruction No. 18

It might be well at this point, before I proceed further, to explain to you the meaning of certain terms and expressions which I shall use during the course of these instructions.

The plaintiff must prove its case, and the defendant its affirmative defense, by a fair preponderance of the evidence, except as I shall otherwise instruct you. By that is meant that the evidence must preponderate or weigh heavier in favor of the party having the burden of proof as to the complaint or the affirmative defense. By a fair preponderance is not necessarily meant the greater number of witnesses, or the length of presentation of testimony, but rather the greater weight of the evidence, taken together—that is, that evidence upon any question at issue which convinces you most strongly of its truthfulness. If the evidence on an issue is equally balanced, then there is no preponderance and the party having the burden to establish that issue must fail.

## Instruction No. 19

When it is said in these instructions that the burden is upon the plaintiff or defendant to prove certain issues in the case, it is not to be understood that the plaintiff or defendant is confined solely to the proof furnished by such party or parties alone, but on the other hand, the jury has the right, and it is their duty, to take into consideration all the evidence in the case bearing upon the issues, whether such evidence comes from the side of the plaintiff or whether it comes from the side of the defendant.

## Instruction No. 20

It is not required that every material fact upon which the plaintiff bases its cause of action or upon which the defendant bases its affirmative defense must be established by direct and positive evidence, but it is within the legitimate province of the jury to draw reasonable and natural inferences from the facts and circumstances either admitted or proved by a fair preponderance of the evidence.

## Instruction No. 21

With respect to the question of inferences that may be drawn from the circumstances of the case, I instruct you that there are two classes of evidence recognized and admitted in courts of justice, upon either of which juries may lawfully find the existence of a fact. One is direct evidence, and the other is circumstantial evidence. In "direct" evidence, witnesses testify directly of their own knowledge of the main fact or facts to be proved, while "circumstantial" evidence is the proof of certain facts and circumstances in a given case from which the jury may, under certain conditions, infer other connecting facts which usually and reasonably follow according to the common experiences of mankind.

## Instruction No. 22

The attorneys for both sides have agreed to stipulate certain matters involved in this case. The Court instructs you that the matters so stipulated or agreed to must be accepted by you as true.

## Instruction No. 23

There are certain other general principles governing the manner in which you should approach your duties in this case which I should like to mention to you at this time.

## Instruction No. 24

I should like to instruct you that you are the sole judges of the credibility of the witnesses and of the testimony that you have heard. In determining the credibility of witnesses you have a right to take into consideration the demeanor of such witnesses on the stand, their candor and sincerity in testifying; or the lack of the same; their interest or lack of interest in the outcome of the trial; their knowledge or lack of knowledge concerning the facts about which they testify; their prejudices or biases, if any are shown; their relationship, if any, to either party to the suit, and such other facts and circumstances, as disclosed by the evidence, as will assist you in determining the weight you should give to the evidence in the case.

If you find that any witness knowingly testified falsely to any material fact in issue, I instruct you that you may disregard

all of the evidence of such witness wherein such evidence is not corroborated by other evidence.

Instruction No. 25

During the trial of this case certain testimony has been read to you by way of deposition. The testimony of a witness who for some reason cannot be present to testify from the witness stand is usually presented in writing under oath in the form of a deposition. Such testimony is entitled to the same consideration and, in so far as possible, is to be judged as to credibility and weighed by the jury in the same way as if the witness had been present.

Instruction No. 26

Ordinarily, in the trial of cases in court, witnesses are confined in their testimony to facts within their personal knowledge and they are not permitted to draw conclusions or express opinions. That is the general rule, but there is an exception to that rule where the points in issue arise out of a particular science or art concerning which there are trained minds who have special knowledge, learning, or schooling in that particular field. Such persons are called experts and because of that special training or learning they are entitled to express opinions concerning the matters at issue.

You will, of course, weigh and evaluate the testimony of an expert witness in this case precisely as you weigh the testimony of any nonexpert witness; that is to say, you will take into account the probability and reasonableness of the matters to which he has testified, the schooling he has had, the learning and standing that he has in his profession, or the want of it, and the breadth of his experience in the field which would enable him to arrive at a correct conclusion. You should ask yourselves: Is this witness, as a matter of fact, an expert qualified by scientific training and experience to acquaint me with the scientific facts? His testimony should be given such weight as you believe it is entitled to receive.

Instruction No. 27

Expert opinion cannot form the basis of a verdict unless the facts upon which such expert relied are shown by the evidence and afford a reasonably accurate basis for his conclusions as distinguished from mere guess or conjecture. The value or weight of the opinion of the expert is dependent on, and is no stronger than, the facts on which it is predicated, and the opinion has no probative force if such facts do not exist in the case or if the jury does not accept such facts as true.

Instruction No. 28

In your deliberation of this case you should not permit yourself to be influenced by any sympathy for either of the parties.

Instruction No. 29

You are further instructed that if the Judge has said or done anything which has suggested to you that he is inclined to favor the claims or positions of either of the parties you will not suffer yourselves to be influenced by any such suggestion.

I have not expressed, nor have I intended to express, any opinion as to what witnesses are or are not worthy of credence or what inference or inferences should be drawn from the evidence adduced in this case.

Instruction No. 30

Mere assertions alone by counsel in opening statements or final arguments or in the asking of questions of witnesses do not constitute any evidence whatever in this case, and should be disregarded by you as proof of any facts. You should attach no weight to inferences from questions, apart from the sense and meaning of the answers.

Instruction No. 31

In your deliberation you are not to pay any attention to any testimony that was stricken out or any statements of counsel directed to the Court with reference to matters of that kind.

You are to try the case upon the evidence and the legitimate inferences that you may draw from that evidence. You should not be concerned with the reason why the Court decided, at various times throughout the trial, that certain evidence should or should not properly be admitted.

Whether such evidence is admissible is purely a question of law, and you should draw no inferences from the Court's rulings on this matter. In admitting evidence to which an objection is made, the Court does not determine what weight should be given to such evidence; nor does it pass on the credibility of the witnesses.

Instruction No. 32

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff, signed by your foreperson. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing; and the Court will not communicate with any member of the jury on any subject touching the merits of the case, otherwise than in writing, or orally here in open court.

You will note from the oath about to be taken by the bailiff(s) that he (they) too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.

Bear in mind also that you are not to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the issues until after you have reached a unanimous verdict.

Instruction No. 33

When you retire to deliberate upon this case the verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

Instruction No. 34

(Explain form(s) of verdict.)

When you go to your jury room elect one of your number as foreperson.

When you have arrived at your verdict(s) have the foreperson sign it (them) and notify the bailiff in whose charge you will be.

(Ask the attorneys out of the hearing of the jury for exceptions, if any.)

(Excuse alternate juror(s).)

(Jury retires.)