**AMSTED INDUSTRIES INCORPORATED, Plaintiff/Cross–Appellant,**

v.

**BUCKEYE STEEL CASTINGS COMPANY, Defendant–Appellant.**

**Nos. 93–1333, 93–1359.**

United States Court of Appeals, Federal Circuit.

April 18, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied and Declined May 24, 1994.

Rolf O. Stadheim, Law Offices of Rolf O. Stadheim, Ltd., Chicago, IL, argued for plaintiff/cross-appellant. With him on the brief was Joseph A. Grear.

Edward W. Remus, Allegretti & Witcoff, Ltd., Chicago, IL, argued for defendant-appellant. With him on the brief were Robert M. Ward and Thomas A. Fairhall. Also on the brief was Ellen A. Efros, Vorys, Sater, Seymour & Pease, Washington, DC.

Before PLAGER, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

Buckeye Steel Castings Company appeals from a final judgment of the United States District Court for the Northern District of Illinois entered in favor of Amsted Industries Incorporated pursuant to jury verdicts that Buckeye willfully infringed Amsted's U.S. Patent 3,664,269 and that Amsted is entitled to damages in the amount of $1,497,232, *Amsted Indus. Inc. v. Buckeye Steel Castings Co.,* No. 91 C 1179 (N.D.Ill. Jan. 21, 1993). Buckeye also appeals from the district court's order granting Amsted's motion for enhanced damages and attorney fees. Amsted cross-appeals on the amount of damages. The district court denied the parties' motions for judgment as a matter of law (JMOL) on the issues of willful infringement and damages. We affirm on the issues of willful infringement, enhanced damages, and attorney fees, and vacate and remand on the issue of damages.

## BACKGROUND

The '269 patent, which issued in the name of Stanley H. Fillion as inventor on May 23, 1972 and was assigned to Dresser Industries, is entitled "Combined Body Bolster Center Filler and Center Plate for Railway Cars" and claims a particular center plate in combination with several other components to form a railroad car underframe structure. The center plate component is the basis of the present dispute. Dresser made and sold the component center plate under the name "Low Profile" until 1985, at which time it sold the '269 patent and the Low Profile trademark to Amsted. Amsted thereafter began making and selling the Low Profile plate to rail car builders for assembly into the patented combination.

Buckeye also was in the business of manufacturing center plates for sale to rail car builders. Buckeye was aware of the '269 patent as early as 1976. After numerous attempts to design around the center plate component and a request for a license under the patent which Dresser denied, Buckeye copied the Low Profile center plate despite counsel's advice that in doing so, Buckeye would likely infringe the '269 patent.

Amsted brought suit against Buckeye on February 25, 1991 for contributory infringement, alleging that Buckeye's infringement was willful. Buckeye denied infringement and asserted that the patent was invalid.

The case was tried to a jury, which returned special verdicts that Buckeye infringed the '269 patent, that Buckeye's infringement was willful, and that the patent was not invalid. The jury further found that Buckeye was liable for damages in the amount of $1,497,232 to compensate for Amsted's lost profits from January 10, 1986, the date that Amsted allegedly notified Buckeye of its infringement pursuant to 35 U.S.C. § 287(a) (1988).

The parties filed various post-trial motions. Buckeye moved for JMOL or a new trial on the issues of willful infringement and damages. Amsted moved for enhanced damages, attorney fees, and for JMOL that its damages were not limited under section 287(a). The district court declined to set aside the jury's verdict of willful infringement, granted Amsted's motion for enhanced damages and attorney fees, ruled that Amsted's damage recovery was limited under section 287(a), and held that the jury properly determined the date on which Amsted notified Buckeye of its infringement pursuant to that provision.

On appeal, Buckeye does not challenge the jury's findings that the '269 patent was infringed and is not invalid. Buckeye only appeals the determinations of willful infringement, enhanced damages, attorney fees, and notice under section 287(a). Amsted cross-appeals from the district court's ruling that its damages are limited under section 287(a).

## DISCUSSION

### A. *Willful Infringement*

■ The jury found that Buckeye's infringement was willful. In denying Buckeye's motion for JMOL, the district court concluded that "[t]he record provides a more than sufficient evidentiary basis for a reasonable jury to find that Buckeye deliberately or recklessly disregarded Amsted's patent rights." Slip op. at 19. Buckeye argues that that determination was in error.

■ In finding that Buckeye's infringement was willful, the jury was required to find by clear and convincing evidence in view of the totality of the circumstances that Buckeye acted in disregard of the '269 patent and lacked a reasonable basis for believing it had a right to do what it did. *See American Medical Sys., Inc. v. Medical Eng. Corp.*, 6 F.3d 1523, 1530, 28 USPQ2d 1321, 1324 (Fed. Cir.1993) ("*AMS*"). The issue before us is whether that finding was supported by substantial evidence. *See Braun, Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 823, 24 USPQ2d 1121, 1127 (Fed.Cir.1992). Under this standard, we review the evidence in the light most favorable to Amsted, the non-moving party, drawing all reasonable inferences in Amsted's favor, to determine whether reasonable persons could have reached the jury's verdict. *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1454–55, 223 USPQ 1161, 1166–67 (Fed.Cir.1984), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2676, 86 L.Ed.2d 694 (1985). We will disturb the district court's decision not to overturn the jury's verdict "only if the evidence so conclusively favors [Buckeye, the moving party,] that reasonable jurors could not arrive at a contrary verdict." *Tol–O–Matic, Inc. v. Proma Produkt–Und Mktg.*, 945 F.2d 1546, 1549, 20 USPQ2d 1332, 1335 (Fed.Cir.1991).

Buckeye argues that it copied the patented invention only after forming a good faith belief that the patent was invalid. As evidence of its good faith, Buckeye relies on the testimony of Jack Downes, Buckeye's engineering director, that he made the decision to copy the '269 center plate after forming a good faith belief that the patent was invalid. Buckeye also relies on written opinions it received from its outside counsel, Charles Pigott. Buckeye maintains that in view of Downes' testimony and the written opinions on which Downes claimed to have relied, no reasonable jury could have found that Buckeye's infringement was willful.

■ "It is well settled that a potential infringer having actual notice of another's patent rights has an affirmative duty of due care. That affirmative duty will normally entail the obtaining of competent legal advice before engaging in any potentially infringing activity or continuing such activity." *Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1084,

4 USPQ2d 1044, 1051 (Fed.Cir.1987), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). However, "that an opinion of counsel was obtained does not 'always and alone' dictate a finding that the infringement was not willful." *Id.* at 1084 n. 13, 4 USPQ2d at 1051 n. 13 (citation omitted). What matters is the nature of that opinion and what effect it had on an infringer's actions. *See Minnesota Mining & Mfg., Co. v. Johnson & Johnson Orthopaedics, Inc.,* 976 F.2d 1559, 1581, 24 USPQ2d 1321, 1340 (Fed. Cir.1992).

Downes testified that one of the Pigott opinions on which he relied was dated October 13, 1976. That opinion, however, clearly was not directed to validity, but to infringement, Pigott stating that he "[did] not intend to discuss [the] question [of validity] in any detail." Pigott also testified at trial that the 1976 opinion was "preliminary" and "just an off-the-cuff kind of thing," and that he did not intend for it to be a final opinion on which Buckeye would rely, although in 1980, Pigott knew of a validity opinion prepared by another attorney that had "apparently" concluded that the '269 patent was invalid over the prior art.

Downes also testified that he relied on additional opinions by Pigott. The record reveals that the first opinion purporting to address validity was written in 1982. That letter was a response to a letter from Downes expressing Buckeye's interest in "a direct copy of the Dresser Center Plate" and specifically requesting Pigott to render a validity opinion. Pigott commissioned a validity search, after which Pigott wrote the 1982 letter in which he set forth "a few general views on validity" and stated that "the patent is probably invalid" for obviousness. Nevertheless, Pigott explicitly suggested that Downes or another Buckeye individual review his comments and the prior art patents generated by the search and report back to him whether there was disagreement with any of Pigott's statements or whether there was "any possibility for avoiding infringement." Pigott stated that he would provide Buckeye with additional information, *inter alia,* on the chances of invalidating the patent after Buckeye reported back to him.

We find no indication that Buckeye ever responded to Pigott's request. In fact, the next item of correspondence, dated August 24, 1984, expressed Buckeye's decision to copy the patented invention. Pigott responded on September 13, 1984, by stating only that, based on his review of the patent and his 1982 letter, "it is my rather strong opinion that the '269 patent is invalid...." Soon thereafter, Pigott advised Downes that Buckeye's proposed center plate would likely be found to infringe the '269 patent. The record further reveals that as late as March 2, 1989, Pigott stated in a letter to Downes that "we have never made a thorough search for prior art patents." This correspondence reveals that Pigott's opinions on which Downes claimed to have relied were not final and thorough invalidity opinions as Buckeye claims, but were all based on Pigott's 1982 letter, in which Pigott explicitly requested that Downes report back to him, and in which Pigott characterized the prior art forming the basis of the opinion as not "especially helpful." Downes did not respond, however, and Pigott's validity analysis essentially ended with that letter. Thereafter, Downes made the decision to copy. On the basis of the evidence before it, it would have been reasonable for the jury to conclude that Downes knew that the 1982 letter was not a complete validity analysis and thus that he lacked a good faith belief that the patent was invalid when he made the decision that Buckeye would copy the plate.

There was also some evidence that Pigott was not fully apprised of all aspects of the patented invention, and that Downes knew of that misunderstanding and failed to correct it. Pigott repeatedly stated that "[t]he only function [the spacer plates] perform insofar as I am aware is the expected reinforcement function." In one of his letters, Pigott stated that "I believe the patent is invalid as being an obvious use of reinforcement plates for reinforcement of the center sill as required when using a low profile center plate", and in another that the patent is "an obvious use of reinforcement plates to reinforce the center sill as required when using a low profile center plate." The record reveals that prior to his validity study Pigott requested Downes

to "advise [him] if [he] had misstated the facts in any way," and Downes replied: "It appears you have not misstated the facts in any way."

Downes' trial testimony, however, indicates that Downes knew that the spacer plates served an additional function, they also transferred load into the center plate:

> Q: At the time that you received the various letters from Mr. Pigott opining that he thought the patent was invalid, did you believe that the only possible invention for the ['269] patent was the use of spacer plates to reinforce the sill?
>
> A: No, I did not.
>
> Q: Did you ever express that view to Mr. Pigott?
>
> A: The view that I didn't have?
>
> Q: That you did not believe that the only possible invention in the ['269] patent was the use of reinforcing—the use of spacer plates to reinforce the sill?
>
> A: I doubt that I would have said something like that, counsel.
>
> Q: When you were relying on Mr. Pigott's opinion, did you believe that the only function of the spacer plates was to reinforce the sill?
>
> A: As applied in the ['269] case, you mean? The spacer plates as applied—it is not the only function, but it is an important function.
>
> Q: And a very important function of the spacer plate in the ['269] patent is to carry the load from the car down to the center plate, isn't that correct?
>
> A: Yes.

On the basis of this evidence, the jury could have reasonably concluded that Downes knew that Pigott did not fully understand the invention and therefore knew that Pigott's invalidity opinions, such as they were, were based on less than full knowledge.

There was also evidence that Downes did not communicate objective evidence of non-obviousness to Pigott. Pigott testified that Downes failed to inform him that "when certain people skilled in the art saw the ['269] invention, that they expressed skepticism as to whether it would work," and that when Downes himself first saw the invention he thought it would be too light. Buckeye repeatedly emphasizes Downes' testimony that he had a good faith belief that the '269 patent was invalid and essentially argues that the jury was not permitted to discredit his testimony because it was uncontradicted. That is incorrect. It is within the province of the jury to determine the credibility of a witness and the weight to be given his testimony; the jury is not required to accept testimony as true, even if it is uncontradicted. *U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 704, 8 USPQ2d 1885, 1892 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). For all of the above reasons, it would have been reasonable for the jury to discredit Downes' testimony and to conclude that Downes did not have a good faith belief that the patent was invalid when he made the decision to copy. We thus conclude that the evidence before the jury adequately supports its finding that Buckeye's infringement was willful.

## B. *Enhanced Damages and Attorney Fees*

Buckeye appeals the district court's grant of Amsted's motion for treble damages pursuant to 35 U.S.C. § 284 (1988), which provides that a trial court "may increase the damages up to three times the amount found or assessed." A decision whether to enhance damages is committed to the discretion of the trial judge and will not be disturbed absent a clear showing of abuse of discretion. *AMS*, 6 F.3d at 1532, 28 USPQ2d at 1326.

In awarding the maximum enhancement of damages, the district court considered the factors set out in *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 23 USPQ2d 1426 (Fed.Cir. 1992), including whether there was deliberate copying, whether the infringer knew of the patent and had a good faith belief that it was invalid, the infringer's behavior as a party to the litigation, the defendant's size and financial condition, and the closeness of the willfulness issue. *Id.* at 827, 23 USPQ2d at 1435. The court concluded that in view of these factors, particularly Buckeye's deliberate copying and inappropriate litigation behavior, the jury's finding of willfulness should

be accorded "its full potential legal effect" and that Amsted is entitled to treble damages.

Buckeye argues that the court abused its discretion in trebling Amsted's damage award. Buckeye asserts error in each of the court's underlying findings and generally argues that the court failed to consider mitigating factors. We reject all of Buckeye's arguments. Buckeye has conceded that it deliberately copied the patented invention and, as set forth above, the jury's finding of willfulness will not be disturbed. There is no error in the district court's finding that Buckeye lacked a good faith belief that the patent was invalid.

We also reject Buckeye's challenge to the court's express finding that Buckeye behaved inappropriately during litigation by "burden[ing] the court and Amsted with ... meritless motions." Slip op. at 5. The record clearly reveals that Buckeye filed numerous motions, including one in direct violation of a court order. "The trial judge is in the best position to weigh considerations such as the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.,* 781 F.2d 198, 201, 228 USPQ 367, 369 (Fed.Cir.1986). The decision whether to increase damages "provides an opportunity for the trial court to balance equitable concerns as it determines whether and how to recompense the successful litigant." *Id.* We conclude that the district court did not abuse its discretion in trebling Amsted's damages.

■ Buckeye also challenges the district court's award of attorney fees to Amsted under 35 U.S.C. § 285, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Whether a case is exceptional is a determination of fact which we review for clear error, *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1128, 25 USPQ2d 1913, 1921 (Fed.Cir.1993), while a decision

whether to award attorney fees in an exceptional case is committed to the discretion of the trial judge. *Modine Mfg. Co. v. Allen Group Inc.,* 917 F.2d 538, 543, 16 USPQ2d 1622, 1626 (Fed.Cir.1990).

In view of our decision that the jury's finding of willful infringement must stand, there is no basis on which to conclude that the district court's finding that this case is exceptional under section 285 is clearly erroneous. *See Id.* ("An express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional.' "). Additionally, we find no abuse of discretion in the district court's award of attorney fees to Amsted.[1]

### C. Marking/Notice Requirement of 35 U.S.C. § 287

#### 1. Amsted's cross-appeal

■ Amsted cross-appeals from the district court's ruling that, because the patented articles were not marked, Amsted's recovery of damages was limited to the period after which it notified Buckeye of its infringement pursuant to 35 U.S.C. § 287. Section 287(a) provides in pertinent part:

> Patentees, and persons making or selling any patented article for or under them, may give notice to the public that the same is patented ... by fixing thereon the word "patent".... In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

The district court held that section 287 limited Amsted's recovery of damages because Amsted's customers, to whom Amsted sold one element of the patented combination with the expectation that they would use that element to make and sell the patented inven-

---

1. The allowability of expert witness fees under 35 U.S.C. § 285 is the subject of a decision of this court entered concurrently, *Amsted Indus. Inc. v.*

*Buckeye Steel Castings Co.,* 23 F.3d 374 (Fed.Cir. 1994).

tion, were implied licensees who were "making or selling [the] patented article for or under [Amsted]" within the meaning of section 287. The court reasoned that "[t]he distribution or manufacturing arrangement of a patentee, unilaterally chosen by the patentee, cannot be allowed to relieve the patentee of its duty to mark under Section 287." Slip op. at 3.

Amsted argues that section 287(a) does not so limit its damages. Amsted emphasizes that it never made the patented article and that its customers, who did make and sell the patented articles, did not do so "for or under" Amsted within the meaning of section 287(a). Amsted thus asserts that its recovery of damages should not have been predicated on marking or notice under section 287(a) and that it was entitled to damages from the beginning of Buckeye's infringement.

 The question before us is the scope to be accorded the "for or under" language of section 287(a). This is an issue of statutory construction which we review for correctness as a matter of law. *AMS*, 6 F.3d at 1534, 28 USPQ2d at 1329. A licensee who makes or sells a patented article does so "for or under" the patentee, thereby limiting the patentee's damage recovery when the patented article is not marked. *See Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1066, 3 USPQ2d 1288, 1292 (Fed.Cir.1987). In view of the purpose of section 287, "to encourage the patentee to give notice to the public of the patent," *AMS*, 6 F.3d at 1538, 28 USPQ2d at 1332, there is no reason why section 287 should only apply to express licensees and not to implied licensees.[2]

There is no dispute that Amsted impliedly authorized its customers to make, use, and sell the patented article. The record reveals

that Amsted manufactured and sold its center plates for use in the patented combination, and that Amsted provided its customers with installation drawings which instruct how to assemble the center plate, along with other components, according to the teachings of the patent. Amsted argues that had it marked its center plate it would have violated 35 U.S.C. § 292 which prohibits the marking of an unpatented article. This is not persuasive. A marking such as "for use under U.S. X,XXX,XXX" would have sufficed. Moreover, Amsted could have sold its plates with a requirement that its purchaser-licensees mark the patented products "licensed under U.S. X,XXX,XXX." *See Devices for Medicine*, 822 F.2d at 1066, 3 USPQ2d at 1292. Such marking by either Amsted or its purchasers would have fulfilled the policy goal of notifying the public concerning the patent status of items in commerce. *See AMS*, 6 F.3d at 1537, 28 USPQ2d at 1331. Thus, we conclude that Amsted's right to recover damages prior to actual notification is dependent upon compliance with the marking or notice requirements of section 287(a). Since there is no dispute that the patented articles sold by Amsted's customers were never marked, Amsted is precluded from recovering damages prior to the date that Buckeye, the accused infringer, "was notified of the infringement." Accordingly, the next issue before us is the date on which effective notice occurred.

*2. Proper notice under section 287*

 The parties dispute which of two letters written by Amsted to Buckeye, one dated January 10, 1986 and the other January 27, 1989, constituted effective statutory notice. The contents of these letters are not

---

2. Both parties cite district court cases in support of their respective positions. These cases are not binding on us. However, we note with approval the cases relied on by Buckeye, particularly *In re Yarn Processing*, 602 F.Supp. 159, 169, 225 USPQ 765, 771–72 (W.D.N.C.1984) (section 287 applies to a nonmanufacturing patentee who has licensed or authorized others to produce or sell the patented article "regardless of the particular form [the] authorizations may take"), and *Butterfield v. Oculus Contact Lens Co.*, 332 F.Supp. 750, 761–62, 171 USPQ 527, 535 (N.D.Ill.1971),

*aff'd* 177 USPQ 33, 1973 WL 19832 (7th Cir. 1973) (section 287 applies where patentee makes a semi-finished contact lens and sells it to customers who finish off and sell the patented structure). To the extent the cases cited by Amsted are inconsistent with our holding here, they are not considered persuasive on this point. *See Analytical Controls v. American Hosp. Supply Corp.*, 518 F.Supp. 896, 217 USPQ 1004 (S.D.Ind.1981) and *Abington Textile Mach. Works v. Carding Specialists, Ltd.*, 249 F.Supp. 823, 148 USPQ 33 (D.D.C.1965).

disputed. The 1986 letter stated in pertinent part:

> This is to advise you that Amsted ... has acquired a number of properties [from Dresser] ... including [the '269 patent]....
>
> It is our understanding that Dresser Industries actively sought to enforce its patent ... and those rights have been heretofore respected in the industry. AMSTED–ASF expects to continue to enforce those rights which it has acquired and similarly expects our industry to respect its patents.
>
> Accordingly, you should acquaint yourself with the ['269 patent] and refrain from supplying or offering to supply component parts which would infringe or contribute to the infringement of the patent[ ]. You should not offer to supply items which are copies of or designed to replace our LOW PROFILE center plate.

This letter was broadcast to a number of other companies, not only to Buckeye. It did not explicitly charge Buckeye with infringement of Amsted's '269 patent.

Amsted's 1989 letter stated in pertinent part:

> On January 10, 1986 I wrote to you and advised of AMSTED Industries' ownership and enforcement policy respecting the ['269 patent]....
>
> In our view [your center plate, a photocopy of which is attached,] or the intended application thereof to a freight car infringes the ['269 patent]. Accordingly we demand that you immediately cease and desist from any further unauthorized production and sales of such castings that ... include features covered by our patents.....
>
> We expect to ... enforce our patent rights against your company should the matter remain unresolved.

Both parties agree that the 1989 was proper notice; the dispute is whether the 1986 letter so qualifies.

The jury found that the 1986 letter constituted statutory notice. In denying Buckeye's motion for JMOL on this issue, the court held that the notice requirement of section 287 does not require a specific charge of infringement and that, "[g]iven all the circumstances, the jury permissibly concluded that the 1986 letter notified Buckeye of [its] infringement." Slip op. at 27. The court specifically pointed to evidence that Buckeye knew that it was infringing at the time it received Amsted's letter and evidence evincing Buckeye's "understanding" that the 1986 letter was a notice of infringement.

Buckeye argues that the district court erred in denying its motion for JMOL on this issue because the 1986 letter did not constitute a notice of infringement under section 287 as a matter of law. Buckeye asserts that the statute requires a patentee to specifically charge an infringer with infringement and that a general communication which merely gives notice of the patent and the patentee's intention to enforce it is insufficient. Buckeye maintains that it was not notified of its infringement by Amsted until it received the 1989 letter and that Amsted was thus precluded from recovering damages under section 287 prior to that date.

Amsted argues that the notice provision does not require the patentee to identify an accused device, but only to inform the defendant of the type of product that would infringe. Amsted asks us to hold that the 1986 letter was sufficient notice in the context of what Buckeye knew at the time it received that letter and what Buckeye understood the letter to mean. Amsted emphasizes that Buckeye had known about the '269 patent for ten years and ultimately decided to copy it after numerous unsuccessful attempts to design around it. Amsted asserts that when Buckeye received the 1986 letter it knew it was infringing.

The question before us, the proper interpretation of the statutory language "notified of the infringement," is one which we review for correctness as a matter of law. *See* AMS, 6 F.3d at 1534, 28 USPQ2d at 1329. Section 287(a) provides that absent marking, a patentee may not recover damages without proof that "the infringer was notified of the infringement." The Supreme Court in *Dunlap v. Schofield,* 152 U.S. 244, 14 S.Ct. 576, 38 L.Ed. 426 (1894), held that the "clear

meaning" of this section[3] is that a patentee cannot recover damages absent marking or notice to the "particular defendants by informing them of his patent *and of their infringement of it.*" 152 U.S. at 247–48, 14 S.Ct. at 577 (emphasis added). The Court further stated that notice "is an affirmative act, and something to be done by him." *Id.* Because the plaintiffs in *Dunlap* offered no proof in support of their allegation that they had notified the defendants of the patent and of their infringement, the Court held that they could not recover damages. 152 U.S. at 248, 14 S.Ct. at 577. *Dunlap* thus established that notice must be an affirmative act on the part of the patentee which informs the defendant of his infringement. We regard *Dunlap* as highly persuasive, if not controlling, on the meaning of the notice requirement of section 287.[4]

■ For purposes of section 287(a), notice must be of "the infringement," not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device. The 1986 letter does not meet this standard. It is irrelevant, contrary to the district court's conclusion, whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer. *See AMS*, 6 F.3d at 1537 n. 18, 28 USPQ2d at

1331 n. 18 (notice of infringement must come from the patentee, not the infringer); and *Devices for Medicine*, 822 F.2d at 1066, 3 USPQ2d at 1292 ("Absent notice, [defendant's] 'knowledge of the patents' is irrelevant.") (emphasis omitted). *See also* Donald S. Chisum, *Patents* § 20.03[7][iv] at 20–523–24 (1993) (for purposes of § 287 notice, the patent owner is required to give "specific and actual notice to the accused infringer charging infringement of the patent in question. It is not usually sufficient that the infringer had actual knowledge of the patent."). The 1986 letter was merely informational, of the kind that companies often send to others without intending to charge infringement. Just as such letters tend not to be threats sufficient to justify a declaratory judgment action, they also are not charges of infringement for "notice" purposes.

We thus conclude as a matter of law that the 1986 letter, which notified the whole industry, including Buckeye, only of Amsted's ownership of the patent and generally advised companies not to infringe, was not notice within the meaning of section 287. Amsted accordingly did not give Buckeye notice for purposes of section 287 until its 1989 letter, which specifically charged Buckeye with infringement and specified an infringing device. The district court thus erred as a matter of law in denying Buckeye's motion for JMOL on this issue. Amsted may recover damages only after it notified Buckeye of its infringement with the 1989 letter.[5] We

---

3. *Dunlap* involved the predecessor provision to section 287(a), Revised Statute 4900, which, for purposes of the notice requirement, was essentially identical to the present section 287(a). Revised Statute 4900 provided in pertinent part:

> It shall be the duty of all patentees ... to give sufficient notice to the public that the same is patented ... and in any suit for infringement, by the party failing so to mark, no damages shall be recovered by the plaintiff, *except on proof that the defendant was duly notified of the infringement*, and continued after such notice to make, use, or vend the article so patented.

4. This is not contrary to our statement in *AMS*, 6 F.3d at 1536, 28 USPQ2d at 1330, that cases decided under the predecessor statutes to section 287(a) are not controlling on the interpretation of the present statute. Contrary to the present case, *AMS* involved a portion of section 287(a)

that is significantly different from that of its predecessor. Specifically, the former statute placed a "duty" to give notice on the patentee, while the current provision provides that the patentee "may" give notice. In view of that language change which made marking permissive rather than mandatory, we held in *AMS* that a delay between issuance of the patent and compliance with the marking requirement of § 287(a) will not prevent recovery of damages accruing after the date marking has begun. *Id.* at 1537, 28 USPQ2d at 1331.

5. The district court also stated that the notice requirement of section 287 is satisfied where the infringer acknowledges a specific communication to be a notice of infringement. We need not address whether that statement of the law is correct because the record clearly does not support a finding that Buckeye so acknowledged the 1986 letter.

thus vacate the jury's damage award and remand for a recalculation of damages from the date of the 1989 letter.

### D. *Damages*

 Finally, Buckeye argues that the jury's damage award was excessive because the jury failed to account for the $40 per center plate that Amsted was required to pay Dresser, pursuant to their purchase agreement, for each center plate that Amsted sold. In denying Buckeye's post-trial motion on this issue, the district court stated that Buckeye waived this issue by failing to object to evidence and argument pertaining to the disputed $40. The court nevertheless addressed the issue and held that the jury's award should not be disturbed because there was no indication that the jury included the $40 per plate in its award and because there was sufficient evidence to support the jury's award exclusive of the $40. We conclude that the jury award was reasonable in light of the entire record. *See Sun Studs, Inc. v. ATA Equip. Leasing, Inc.,* 872 F.2d 978, 994, 10 USPQ2d 1338, 1352 (Fed.Cir.1989). Buckeye's attempts to reconstruct jury deliberations are speculative at best. The jury awarded less than the $1,649,512 Amsted sought and the record simply does not show that the jury failed to reduce the lost profits by $40 per plate.

### CONCLUSION

The district court did not err in denying Buckeye's motion for JMOL on the issue of willful infringement and did not abuse its discretion in awarding Amsted treble damages and attorney fees. The court correctly determined that Amsted's recovery of damages is limited under 35 U.S.C. § 287(a), but erred as a matter of law in denying Buckeye's motion for JMOL respecting the date that Amsted properly notified Buckeye of its infringement. Accordingly, the case is remanded for a redetermination of damages consistent with this opinion.

### COSTS

Each party shall bear its own costs.

**AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED**