**SUNTIGER, INC., et al., Plaintiffs,**

v.

**SCIENTIFIC RESEARCH FUNDING GROUP, Defendant.**

No. Civ.A. 97–423–A.

United States District Court, E.D. Virginia, Alexandria Division.

April 29, 1998.

Robert Steven Katz, Banner & Witcoff, Ltd., Washington, DC, for Plaintiffs.

Craig Crandall Reilly, John F. Anderson, Richards McGettigan, Reilly & West, PC, Alexandria, VA, Michael K. Coran, Klehr, Harrison, Harvey, Branzburg & Allers, Phil-adelphia, PA, James Creighton Wray, Mc-Lean, VA, Barrie Debra Berman, Fisher, Wayland, Cooper, Leader & Zaragoza, Washington, DC, Regis E. Slutter, Alexandria, VA, George H. Gerstman, Gerstman, Ellis & McMillin, Ltd., Chicago, IL, for Defendant.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

On April 1, 1998, after hearing all of the evidence presented at the jury trial of this patent infringement action, the Court found as a matter of law that the defendant SRFG had not proven by clear and convincing evidence that the patents at issue were either invalid or unenforceable. The Court also found that SRFG was liable for direct infringement and inducement of infringement of U.S.Patent Nos. 4,878,748 ("the '748 patent"); 5,177,509 ("the '509 patent"); and 5,400,175 ("the '175 patent"). The issues of willfulness and damages were sent to the jury, which awarded $2,701,942.00 in damages and found that SRFG's infringement of the '748 and '509 patents was willful. Now before the Court are the parties' post-trial motions.

## I.  *SRFG's Motion for Declaration of Mistrial*

SRFG argues that the Court should declare a mistrial on the basis of the Court's rulings that certain evidence would be excluded from trial as a result of SunTiger's oral motions *in limine* made immediately before the start of the trial. SRFG argues that these oral motions took it by surprise, thereby prejudicing its trial strategy. Although SRFG has labeled its motion as one for a mistrial, such motion is properly made during the course of a trial. If the Court were to grant SRFG's motion, however, the result would be to order a new trial. Accordingly, the Court will deem this motion to be one for a new trial. *See* Fed.R.Civ.P. 59(a). Indeed, SRFG's Motion for a New Trial raises the very issues asserted here; therefore, the evidentiary rulings will be addressed below.

## II. *SRFG's Motion for a JNOV or in the Alternative a New Trial*

SRFG moves the Court for a judgment as a matter of law,[1] or in the alternative for a new trial, asserting that the patents-in-suit are both invalid and unenforceable, that the Court erroneously made findings of infringement and inducement of infringement, and that the Court erroneously excluded evidence from the trial. SRFG also asks for a reduction of the amount of the verdict.[2]

To support its assertion that the patents-in-suit are invalid and unenforceable, SRFG argues that: (1) the '556 application, which led to the '748 patent, was abandoned and cannot be revived under 35 U.S.C. § 120 and 37 C.F.R. § 1.137(b); (2) the patents are (a) invalid and (b) unenforceable in view of a 1986 sale of the sunglasses covered by the invention; (3) the '509 and '175 patents are invalid and unenforceable because the inventors did not take part in the prosecution of the patents, even though they signed declarations to the contrary; (4) the 1982 sale of Avian sunglasses renders the '748, '509, and '175 patents invalid and unenforceable; and (5) Stephens and Hyson, who submitted opinion declarations in support of the patent applications, failed to disclose their financial interests to the examiner, rendering the patents unenforceable.

■ With respect to the arguments that the '556 application cannot be revived and that the 1986 sale renders the patents invalid (arguments (1) and (2)(a) above), SunTiger correctly points out that SRFG has waived these arguments. SRFG's arguments with respect to the revival of the abandoned '556 application and the 1986 sale were addressed in two summary judgment motions, both of which the Court denied by Orders dated July 11, 1997, and March 27, 1998. At trial,

SRFG did not introduce any evidence, nor did it even argue, that the abandoned '556 application was revived erroneously. Moreover, with respect to the 1986 sale, SRFG offered no expert at trial to rebut what SunTiger had established at summary judgment, namely that the 1986 sale did not render the patent invalid. Thus, the pretrial rulings on these issues basically were unaffected by the trial. Because these arguments were addressed in pretrial motions and SRFG did not make those arguments a part of the trial, those issues have been waived. *See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1234–36 (4th Cir. 1995).

■ Moreover, because it did not make a motion for judgment as a matter of law at the close of all the evidence, SRFG has waived its ability to raise the remaining issues presented in its post-trial motion. *See* Fed.R.Civ.P. 50(b); *Smith v. University of North Carolina,* 632 F.2d 316, 339 (4th Cir. 1980). We note that this case presents no circumstances that would justify an exception to this rule, as there was not substantial compliance with the rule, the Court did not excuse the failure to renew the motion, and manifest injustice will not otherwise occur. *See id.*

Nevertheless, even if SRFG were not precluded from raising the issues presented in its post-trial motion, the Court finds its arguments to be without merit.[3] A motion for judgment as a matter of law will be granted when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a). At the close of all of the evidence in this case, the Court granted SunTiger's Motion for Judgment as a Matter of Law, finding that the patents-in-suit were both valid

---

**1.** Plaintiffs point out in their brief that defendant's error in labeling the motion as one for judgment notwithstanding the verdict ("JNOV"), rather than one for judgment as a matter of law, is "merely formal." *See* Fed.R.Civ.P. 50 advisory committee's note. The Court notes that because SRFG is asking the Court to address issues that were not submitted to the jury, namely the validity and enforceability of the patents-in-suit, it construes the motion as being made under Fed.R.Civ.P. 50(a).

**2.** The Court notes that SRFG has not submitted a transcript of the trial to aid the Court in ruling on this motion; therefore, the Court relies on its notes and memory of the trial.

**3.** The Court notes that SunTiger did not respond to these arguments substantively, relying solely on its procedural argument that SRFG waived its opportunity to raise these issues.

and enforceable. In light of the unrebutted testimony of plaintiffs' expert, Dr. Cozzens, the Court found that SRFG failed to present any evidence to establish that the patents were either invalid or unenforceable. As to infringement, the Court concluded that Bruce Gold's deposition statement, in which he acknowledged that SRFG's products probably infringed the patents-in-suit if the patents were assumed to be valid, fully supported a finding as a matter of law that SRFG's product infringed the patents-in-suit. SRFG, by this motion, is asking the Court to reconsider those rulings.

■ The Court finds that entry of judgment as a matter of law in favor of SunTiger on the issues of patent validity and enforceability was appropriate because there was no legally sufficient evidentiary basis upon which to find that the patents-in-suit were either invalid or unenforceable. With respect to its argument that the 1986 sale renders the patents-in-suit unenforceable (argument (2)(b) above), essentially an argument that SunTiger engaged in inequitable conduct before the PTO by intentionally withholding material information from the patent examiner, the Court finds that SRFG failed to meet its burden at trial. To have prevailed on its unenforceability argument, SRFG needed to show by clear and convincing evidence that SunTiger misrepresented facts to the PTO during prosecution of the patents-in-suit, that the misrepresentation was material, and that SunTiger acted with the intent to deceive the PTO. *See Glaxo, Inc. v. Novopharm, Ltd.*, 52 F.3d 1043, 1048 (Fed.Cir.1995).

■ We find that there is no basis in the record on which the Court can make a determination as to either the materiality of the alleged misrepresentations or the intent to deceive. Indeed, SRFG failed to prove by clear and convincing evidence that the information at issue actually was withheld. To the contrary, evidence was presented at trial that the examiner in fact did have knowledge of the 1986 sale. *See* Def.Ex. 63, at 53. Moreover, even if any information had been

withheld, SRFG presented no expert or other knowledgeable witness to testify that the alleged nondisclosures were material in nature. Moreover, Dr. Cozzens testified about the disclosures and opined that there was no material information withheld from the PTO. Accordingly, the motion is denied on this basis.

SRFG further argues that the '509 and '175 patents are both invalid and unenforceable (argument (3) above) because the claims of those patents were drafted without the knowledge or input of the inventors Diffendaffer and Johansen. *See* 35 U.S.C. § 111 ("An application for patent shall be made, or authorized to be made, by the inventor, except as otherwise provided in this title, in writing to the Commissioner."). In support of this argument, SRFG asserts that Diffendaffer testified by deposition at trial that he was not aware of the filing of the applications leading to those patents. SRFG further asserts that Johansen testified by deposition that the agent of record refused to give her information about the applications and access to them while they were pending.

■ The Court finds SRFG's argument unpersuasive. Because the '509 and '175 patents actually issued, we must presume that the PTO had before it everything it needed to issue them. *See* 35 U.S.C. § 282. Thus, we cannot on this record make a finding that the '509 and '175 were not executed properly.[4] Thus, there is no basis upon which to find that the patents are invalid. Moreover, because there is no basis upon which to conclude that SunTiger withheld anything material from the patent examiner, SRFG's motion also must be denied on the basis of unenforceability.

The Court finds SRFG's argument with respect to the sale of Avian sunglasses (argument (4) above) equally unpersuasive. The only evidence presented at trial relevant to these issues was the testimony of plaintiffs' expert, Dr. Cozzens, who opined that the patent was valid notwithstanding the Avian sunglasses, which did not use polarized lens-

---

4. We note that it was uncontested at trial that the inventors assigned the rights to the patents-in-suit to SunTiger and that the inventors took part in the application process with respect to the '748 patent, which is the parent to the '509 and '175 patents.

es. SRFG tendered no expert to rebut this witness, offering only the argument of counsel. Argument alone is not sufficient to meet the high standard of proof needed to justify a finding of invalidity, namely that of clear and convincing evidence. Furthermore, with respect to unenforceability due to inequitable conduct, we again find that SRFG failed to prove by clear and convincing evidence that the information at issue actually was withheld. Indeed, the prosecution history establishes that the examiner in fact did have knowledge of the 1982 sale of Avian sunglasses. *See* Def.Ex. 63, at 164. In addition, as noted above, even if any information had been withheld, SRFG presented no expert or other knowledgeable witness to testify that the alleged nondisclosures were material in nature. Accordingly, the motion is denied on this basis.

■ We also find argument (5) to be without merit. As SunTiger elicited during the trial, the patent examiner had access to the résumés of both Stephens and Hyson, and in fact those résumés were made part of the trial record. Because both résumés clearly show that Stephens and Hyson were employed as consultants to SunTiger, the Court finds that there was neither a misrepresentation nor an intent to deceive. There is no evidence in the record before the Court that SunTiger took any affirmative action to hide anything from the patent examiner, and the only authority on which SRFG relies does not stand for the proposition that plaintiff was under an obligation to point out specifically any financial interest that the declarants may have had. *See Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.,* 984 F.2d 1182, (Fed.Cir.1993).

For these reasons, the Court finds that there is no basis upon which to grant judgment in favor of SRFG as a matter of law, and its Motion for a JNOV will be denied. Alternatively, SRFG asks the Court for a new trial pursuant to Fed.R.Civ.P. 59(a). The standard governing a district court's consideration of a motion for a new trial was set forth in *Wyatt v. Interstate & Ocean Transp. Co.,* 623 F.2d 888 (4th Cir.1980). In that decision, the Fourth Circuit stated that a trial court may weigh the evidence and consider the credibility of the witnesses, and that it has a duty to set aside a verdict and grant a new trial, even if the verdict is supported by substantial evidence, if the court finds that it is against the clear weight of the evidence, based on false evidence, or will result in a miscarriage of justice. *See id.* at 891.

■ SRFG asserts that the Court erred in granting judgment as a matter of law in favor of SunTiger on the issue of infringement. Specifically, SRFG argues that judgment as a matter of law was improper (1) in view of Exhibit I to the expert report and figure 1 of the '509 and '175 patents; and (2) because the '748 patent requires quantitative determination. As SunTiger correctly points out in its brief, however, the deposition testimony of Gold in which he declares that if the patents are valid, the patents are probably infringed, *see* Gold Depo. at 64, 11. 10–14, is alone a sufficient basis on which to find infringement. Accordingly, SRFG's Motion for a New Trial on this basis will be denied.

■ SRFG also asserts that the Court erred in excluding the following evidence from the trial: (1) evidence of second lens supplier because the expert had samples of other lenses; (2) an opinion letter of counsel which letter was highly relevant to issue of willfulness; and (3) the testimony of Steve Moen. As the trial record shows, all three of these evidentiary rulings were based on SRFG's failure to comply with the discovery rules of this Court and the Federal Rules of Civil Procedure.

With respect to the argument that there were various lens sources, SRFG argues that even though it did not disclose the relevant information in a timely manner in violation of the discovery rules, the Court erred in excluding this evidence because the burden of late disclosure was minimal on SunTiger and the prejudice of exclusion to SRFG was drastic. SRFG asserts that the testimony of SunTiger's expert that he had samples of other kinds of lenses demonstrated that SunTiger was aware of these other lenses.

The Court finds SRFG's argument unconvincing. As SunTiger points out in its brief, SRFG has not presented the Court with any

justification for its failure to disclose in discovery that which it sought to rely on at trial. Although SRFG's current counsel was retained late in this litigation, that fact does not excuse SRFG from complying with the rules by which all litigants are bound in this Court. If the Court were to make an exception in this unexceptional case of failure to follow the discovery rules and obligations, we would be sending a message to the bar that litigants who drag their feet may be excused from abiding by the rules. That practice is precisely what the discovery rules were intended to prevent.

With respect to the argument relating to the advice of counsel letter, SRFG again asserts that although it did not produce the letter in a timely manner, the Court should overlook that fact in light of the minimal burden on SunTiger and the "extreme importance of such evidence to the issue of willfulness." For the same reasons stated above, the Court finds SRFG's argument unpersuasive. Moreover, as SunTiger argues in its brief, the letter may not be as "important" as SRFG claims, as it appears that it would be incompetent to shield SRFG from a finding of willfulness because it was not based on a file history study.

Finally, with respect to the proposed testimony of Steve Moen, SRFG argues that even though Moen failed to appear for deposition, his testimony should not have been excluded from trial because his business partner, Gold, was deposed in his place. We find this argument equally unconvincing because SunTiger noticed the depositions of both Moen and his business partner Gold, as it had the right to do pursuant to the discovery rules of this Court. Moreover, Gold did testify at trial on defendant's behalf. If Moen and Gold were so interchangeable for discovery purposes, Gold's trial testimony in place of Moen's could not have been prejudicial.

For all of these reasons, SRFG's Motion for a JNOV or in the Alternative a New Trial will be denied in its entirety, and the jury verdict will stand.

### III. *SunTiger's Motion for Treble Damages and Attorneys' Fees*

When there is a finding of willful infringement, 35 U.S.C. § 284 gives the Court discretion to increase the damages up to three times the amount found. In addition, under 35 U.S.C. § 285, the Court may award reasonable attorneys' fees to the prevailing party in exceptional cases. It is well established that a finding of willful infringement will justify both an award of exemplary damages, *see Amsted Indus. v. Buckeye Steel Castings,* 24 F.3d 178, 183–84 (Fed.Cir.1994), and a finding that the case is exceptional under § 285, *see id.* 24 F.3d at 184. The Federal Circuit will not set aside the Court's decision absent "a clear showing of abuse of discretion." *Id.* 24 F.3d at 183.

#### A. *Exemplary damages*

Because the jury found willful infringement of all three patents at issue, the Court may award both treble damages and attorneys' fees in its discretion. The Federal Circuit has said that the factors to consider when deciding whether to award treble damages are: (1) whether there was deliberate copying; (2) whether the infringer knew of the patent and had a good faith belief that it was invalid; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; and (5) the closeness of the willfulness issue. *See Amsted,* 24 F.3d at 183 (citing *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 827 (Fed.Cir. 1992)).

At the argument of this motion, plaintiffs' counsel conceded that there was no evidence presented at trial with respect the defendant's size and financial condition. Accordingly, and in view of the fact that the jury awarded the full amount of damages sought by the plaintiffs, this Court declines to award exemplary damages.

#### B. *Attorneys' fees*

Plaintiffs seek a total of $990,457.93 in attorneys' fees and costs, a figure that is based on an average of four methods of analysis: (1) AIPLA[5] Survey ($1,349,000.00);

---

**5.** The American Intellectual Property Law Association.

(2) Case Phase Analysis ($812,860.07); (3) Three–Eighths Attribution ($602,114.54); and (4) 40% Contingent Award ($1,197,857.10).

With respect to the AIPLA Survey, plaintiffs assert that for patent infringement suits in the Washington, D.C., area that have $1–10 million at risk, the total costs through the end of suit at the 75th percentile are in the range of $1,349,000.00. With respect to Case Phase Analysis, plaintiffs assert that this litigation went forward in five phases, and it assessed the percentage of the value of the total services rendered attributable to SRFG at each phase. With respect to Three–Eighths Attribution, plaintiffs assert that because this action originally involved four patents and two groups of defendants (the SRFG defendants and the BluBlocker defendants), three-eighths of the total costs and fees incurred are attributable to SRFG, which went to trial on the three Johansen patents. Finally, with respect to the 40% Contingent Award, plaintiffs assert that a proper method of analysis for computing attorneys' fees and costs is 40% of the jury award in light of their agreement with counsel.

▮ Because attorney fee awards must be based on the specific facts of the particular case, *see Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), this Court evaluates attorneys' fees petitions by applying traditional lodestar analysis, multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate, and then considering the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). These factors govern fee petition analysis in the Fourth Circuit. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226–28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). The factors are: (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the litigation; (5) the customary fee for like work; (6) attorneys' expectation at the outset of the litigation; (7) time limitations imposed by client or the circumstances of the case; (8) amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case within the legal community; (11) nature and length of professional relationship between the attorney and client; and (12) attorneys' fees awarded in similar cases. In this case, only factors 1–3, 5, 7–9, and 12 are applicable.

In this case, the Court finds that it cannot with any real accuracy separate out work that was done as to SRFG and work that was done as to other defendants. Indeed, it would be unfair to SRFG for the Court to impose on it the attorneys' fees attributable to work directed to the other defendants, all of whom settled in full except for the Blu-Blocker defendants who settled as to the three Johansen patents and later prevailed on a motion for summary judgment of noninfringement as to the fourth patent. Apparently none of the settling defendants were required to pay their portion of the plaintiffs' attorneys' fees and costs.

With this litigation scenario in mind, the Court will assess the amount of attorneys' fees and costs to which it finds the plaintiffs are entitled. Plaintiffs assert that three attorneys took primary responsibility for the case: (1) Mr. Schifley, who worked 781 hours and whose normal rates are $280/hour; (2) Mr. Meece, who worked 2053.65 hours and whose normal rates are $180/hour; and (3) Mr. Johnson, who worked 841.85 hours and whose normal rates are $235/hour. The total number of hours billed by the law firm for work on the entire lawsuit is 7150.95.

▮ The Court finds that the hourly rates charged by the various attorneys are reasonable in view of their levels of experience and in light of commensurate fees charged in Northern Virginia for similarly qualified counsel. (Factor 12). Patent law is a specialized area and requires special expertise; therefore, hourly rates are somewhat higher than those of general practitioners. (Factors 3, 5, and 9).

▮ The Court, however, finds the plaintiffs' various approaches to hours unreasonable. Indeed, if the Court awarded plaintiffs

all fees sought for the work of these three attorneys, the amount of that award would be $786,171.75. The Court finds this amount to be excessive because it does not reflect the fact that SRFG was only one of the many defendants named in this action. Indeed, other defendants, and in particular the Blu-Blocker defendants, took the lead during the discovery and summary judgment phases of this litigation. In fact, the Court granted summary judgment in favor of the BluBlocker defendants, and all other defendants except for SRFG settled; therefore, it would not be appropriate to compensate the plaintiffs for the fees incurred for work directed at those other defendants, especially because SRFG did not even have counsel throughout much of the pendency of this litigation and, because they did not take an aggressive approach to the litigation, demanded minimum attention. (Factor 7).

Nevertheless, after the February 13, 1998, grant of summary judgment in favor of the BluBlocker defendants, the only remaining defendant was SRFG. Plaintiffs assert that the total amount of fees and costs incurred after February 13, 1998, through the trial is $164,051.25, and because SRFG was the only remaining defendant throughout that period, 100% of those costs are attributable to SRFG. Rather than trying to apportion a percentage of pre–February 13, 1998, billings to SRFG and then to evaluate all post–February 13, 1998, billings for factors for which the Court usually does not award fees, such as two attorneys conferring, the Court will award all of the post–February 13, 1998, fees that represent work done by the three lead counsel and none of the pre–February 13, 1998, fees.

The Court limits plaintiffs' award to that portion that represents the work of the three lead counsel because plaintiffs' counsel submitted redacted records in support of the petition, making it impossible for the Court to determine what work was actually done and by whom. Accordingly, the Court will reduce the $164,051.25 amount to $130,-643.75. The Court comes to this figure by multiplying the hours that the three lead attorneys worked, for the period after February 13, 1998, through the trial, by each attorney's hourly rate. The numbers used are as follows: (1) Schifley: 185 hours at $280/hour ($51,800.00); (2) Meece: 286.25 hours at $180/hour ($51,525.00); (3) Johnson: 116.25 at $235/hour ($27,318.75). Thus, the three lead counsel billed 587.5 hours for a total of $130,643.75, which is approximately 80% of the total amount sought for that period.

A total award of $130,643.75 for attorneys' fees is appropriate in this case in light of the *Kimbrell's* factors that apply. Preparation for the trial with respect to this particular defendant involved several pretrial motions, several raising complex factual questions, and the fast pace of this docket required an intense dedication of attorney time to the litigation. (Factors 1, 2 and 7). Moreover, the Court notes that plaintiffs' counsel took the case on a contingent fee basis, which means that given the amount of the judgment, they will be made whole for all work expended in this case. We also point out that the actual trial was relatively short, partly as a result of the defendant's having so little evidence to present. Finally, in light of the damages awarded, $130,643.75 is not an unreasonably high attorneys, fee. (Factor 8 and 12).

With respect to costs, the Court finds it appropriate, for the same reasons discussed above, to award the plaintiffs the total amounts reflected only on the law firm's invoices dated March 26, 1998 ($37,612.84) and April 9, 1998 ($17,309.51), for a total award of $54,922.35. This amount includes all costs incurred from February 23, 1998, to April 9, 1998.

## IV. *Conclusion*

For the reasons stated in open court and in this Memorandum Opinion, SRFG's Motion for Declaration of Mistrial and Motion for a JNOV or in the Alternative a New Trial will be denied. In addition, plaintiffs' Motion for Trebled Damages and Attorneys' Fees will be denied as to the trebled damages and granted as to the attorneys' fees and costs, and the Court will award plaintiffs $130,-643.75 in attorneys' fees and $54,922.35 in costs.